# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL MONTELLI,<br>*Plaintiff*,<br><br>v.<br><br>ANDREW SAUL,<br>*Defendant*. | No. 3:18-cv-01780 (JAM) |

## ORDER DENYING MOTION TO REVERSE
## AND GRANTING CROSS-MOTION TO AFFIRM

Plaintiff Michael Montelli claims that he is disabled and unable to work due to several conditions. He filed this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security, who denied Montelli's application for supplemental security income.[1] For the reasons set forth below, I will deny Montelli's motion to reverse the Commissioner's decision and grant the Commissioner's motion to affirm.

### BACKGROUND

I refer to the transcripts provided by the Commissioner. *See* Doc. #12. Montelli filed an application for supplemental security income on June 7, 2016, alleging a disability beginning on December 1, 2012. *Id.* at 112-13. Montelli's claim was initially denied in September of 2016, *id.* at 140, and denied again upon reconsideration on February 24, 2017, *id.* at 148. He then filed a request for a hearing in April of 2017. *Id.* at 151.

Montelli appeared and testified at a hearing in Hartford, Connecticut, before Administrative Law Judge (ALJ) Alexander P. Borre on June 26, 2018. *Id.* at 44. Montelli was represented by counsel. *Ibid.* On August 14, 2018, the ALJ issued a decision concluding that

---

[1] The case was originally captioned "Michael Montelli v. Nancy A. Berryhill, Commissioner of Social Security Administration." Since the filing of the case, Andrew Saul has been appointed the Commissioner of Social Security, and he is substituted as the defendant pursuant to Fed. R. Civ. P. 25(d).

1

Montelli was not disabled within the meaning of the Social Security Act. *See id.* at 16. The Appeals Council denied Montelli's request for review on October 2, 2018. *Id.* at 1. Montelli then filed this case on October 29, 2018. Doc. #1.

To qualify as disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with [their] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009) (citing 20 C.F.R. § 404.1566(b)).

To evaluate a claimant's disability, and to determine whether he qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits [his] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as

> age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [he] has the residual functional capacity to perform [his] past work. Finally, if the claimant is unable to perform [his] past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122-23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)-(v). In applying this framework, an ALJ may find a claimant to be disabled or not disabled at a particular step and may make a decision without proceeding to the next step. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; at Step Five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ concluded that Montelli was not disabled within the meaning of the Social Security Act. At Step One, the ALJ concluded Montelli had not engaged in substantial gainful activity since June 7, 2016, the date of his application for benefits. Doc. #12 at 21. At Step Two, the ALJ found that Montelli suffered from the following severe impairments: "degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome, obesity, and depression." *Id* at 22. The ALJ also took note of Montelli's history of diabetes and obstructive sleep apnea, but did not find either of those conditions to be severe, either individually or in combination with other conditions. *Ibid.*

At Step Three, the ALJ determined that Montelli did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Ibid.* The ALJ considered Montelli's physical impairments as well as his mental impairments. *Id.* at 22-25.

Moving to Step Four, the ALJ then found that Montelli had "the residual capacity to perform light work as defined in 20 CFR 416.97(b) except that the claimant could perform simple and repetitive tasks in an environment with no strict production quotas and no public interaction. The claimant could not climb ladders, ropes, or scaffolds, or tolerate hazards. The claimant could occasionally stoop, kneel, crouch, and crawl. The claimant could frequently finger and handle, bilaterally." *Id.* at 26. At Step Four, the ALJ concluded that Montelli had no past relevant work that he could be capable of performing. *Id.* at 33.

At Step Five, after considering Montelli's age, education, work experience, and residual functional capacity ("RFC"), the ALJ concluded that there were jobs that Montelli could perform that existed in significant numbers in the national economy. *Id.* at 34-35. In reaching this conclusion, the ALJ relied on the testimony of a vocational expert. *Ibid.* The ALJ ultimately held that Montelli was not disabled within the meaning of the Social Security Act. *Id.* at 35.

## DISCUSSION

Montelli raises numerous arguments against the ALJ's decision, and I will consider the arguments in turn.

### *The ALJ's Steps Two and Three analysis*

At Step Two, the ALJ determined that, in addition to several physical conditions, Montelli also experienced depression as a severe impairment. *Id.* at 22. Montelli challenges the ALJ's analysis, arguing that the ALJ instead should have considered and made findings as to his anxiety, attention deficit disorder (ADD), obsessive-compulsive disorder (OCD), and personality disorder. Doc. #24-2 at 2. Even if the ALJ made an error here, that error would not provide a

basis for remand. Because the ALJ found that Montelli suffers from depression, the ALJ continued beyond the standard Step Two analysis to conduct an analysis of the severity of the mental impairments Montelli suffers. *See* Doc. #12 at 28-31.

Montelli also argues, however, that the ALJ erred by failing to consider his additional mental conditions in combination with depression. *See* Doc. #24-2 at 2-3. It is true that the Social Security Act requires an ALJ to consider the combined effect of a claimant's impairments when determining disability. *See McIntyre*, 758 F.3d at 151-52. That is what the ALJ did here. The ALJ explicitly noted that at Step Three he "considered singly and in combination" the "severity of the claimant's mental impairments." Doc. #12 at 23. Although Montelli argues that the ALJ inappropriately did not discuss which symptoms were considered in evaluating Montelli's impairments at Step Three, it is clear that in evaluating Montelli's residual functional capacity, the ALJ considered and gave partial weight to state agency consultants, who discussed and took account of Montelli's anxiety, ADD, and affective disorders. *See id.* at 23-25. Accordingly I conclude that any error the ALJ may have made at Step Two was harmless, and so will decline to remand for that reason.[2]

### *The ALJ's analysis of Montelli's mental impairments*

Montelli next challenges the analysis the ALJ conducted of his mental impairments—principally at Step Three but also in evaluating his RFC. *See* Doc. #24-2 at 4 (citing Doc. #12 at 24-32). Montelli largely argues that the ALJ inappropriately cherry-picked from evidence regarding tasks that he successfully accomplished to diminish the severity of the mental

---

[2] To the extent Montelli challenges the ALJ's consideration of his sleep apnea, *see* Doc. #24-2 at 25-26, the ALJ had substantial evidence to conclude that Montelli's sleep apnea was not a severe impairment. The ALJ relied on hearing testimony and records showing that Montelli's sleep apnea responded to CPAP therapy. *See* Doc. #12 at 22 (citing *id.* at 940); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (*per curiam*) ("Of course, a remediable impairment is not disabling.").

conditions he experiences. *See id.* at 4-5. In particular, he argues that the ALJ overstated the probative force of—and failed to properly contextualize—evidence regarding Montelli's ability to research disability statutes and regulations (*id.* at 5-6), job search efforts (*id.* at 6-8), past employment failures (*id.* at 8-9), ability to watch television unaided (*id.* at 9-10), pet-sitting and animal care (*id.* at 10-12), driving and family interactions (*id.* at 12-13, 15), shopping outside his home (*id.* at 13-15), craft activities (*id.* at 14), and home chores (*id.* at 15-16).

But despite Montelli's objections, the ALJ's opinion does not amount to impermissible cherry picking. The ALJ considered (1) reports that Montelli had memory trouble and could not understand directions, *see* Doc. #12 at 23-24; (2) Montelli's testimony that he could not tolerate crowds and mental status examinations regarding his depressed mood and slow speech, *id.* at 24; (3) Montelli's testimony that he had trouble completing tasks and reports that he would ruminate and be apathetic, *ibid.*; (4) and reports regarding Montelli's psychomotor retardation and disheveled appearance, *id.* at 25. Against this evidence, the ALJ was permitted to consider evidence about Montelli's life and daily activities, as well as to exercise discretion in weighing and resolving conflicts between different kinds of evidence. *See Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983). And although Montelli may object to how the ALJ weighed different pieces of evidence, where—as here—substantial evidence supports the ALJ's conclusion, it is not for this Court to substitute its judgment for that of the Commissioner. *See Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

### *The ALJ's analysis of Montelli's mental status examinations*

Montelli next focuses on a particular aspect of the ALJ's analysis of his mental impairments: the reconciliation of conflicting mental status examinations. As Montelli notes, *see* Doc. #24-2 at 18, the ALJ made multiple references to conflicting medical mental status

6

examinations that, for example, would at times show Montelli as anxious and withdrawn, and would at other times show him to demonstrate "intact attention and intact cognition during meetings with providers," *see* Doc. #12 at 24. Although Montelli expresses concern that the ALJ did not provide pincites to specific citations within the medical records he relied on, *see* Doc. #23-2 at 17-18, he does not appear to dispute that the ALJ was confronted with genuinely conflicting medical evidence as to the effect of Montelli's mental conditions. "[G]enuine conflicts in the medical evidence are for the Commissioner to resolve," *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008), and once an ALJ finds facts, I can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012); *see Johnson v. Berryhill*, 2017 WL 2381272, at *6 (D. Conn. 2017).

Faced with evidence that showed both subjective reports of depression and normal evaluation reports—alongside mixed evidence about how successfully Montelli was able to carry out his daily activities—I cannot conclude that it would be unreasonable for a factfinder like the ALJ to find that Montelli had mild limitations in understanding, remembering, and applying information; moderate limitations in interacting with others; moderate limitations as to concentration, persistence, and pace; and mild limitations as to adapting and managing himself. *See* Doc. #12 at 23-25. Accordingly, I do not find the ALJ to have erred here.

### *The ALJ's adherence to the treating physician rule*

The ALJ gave "partial weight" to the opinion of Dr. Orellana and "little weight" to the opinions of Dr. Manoharan, both of whom were Montelli's treating physicians. *See id.* at 29-31. Montelli argues that the ALJ improperly discounted the opinions of those physicians. Doc. #24-2 at 20-30.

7

The treating physician rule requires that "the opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2) [now, 20 C.F.R. § 404.1527(c)(2)]). When the treating physician's opinion is not given controlling weight, "the ALJ must explicitly consider" a number of factors to determine the proper weight to assign, including "(1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (*per curiam*)); *see generally* 20 C.F.R. § 404.1527(c). The ALJ then must "give good reasons in [his] notice of determination or decision for the weight [given the] treating source's [medical] opinion." *Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (*per curiam*)). Unless "a searching review of the record" provides assurance that "the substance of the treating physician rule was not traversed," an ALJ's failure to apply the factors listed in *Estrella* leaves the Court unable to conclude the error was harmless and requires remand. *Ibid.* (quoting *Halloran*, 362 F.3d at 32-33).

The ALJ did not give Dr. Orellana's opinion controlling weight because it was "only partially consistent with the medical evidence of record as a whole." Doc. #12 at 30. Montelli argues that the ALJ erred in doing so because the ALJ accepted the portions of Dr. Orellana's report that supported an unfavorable opinion, and Montelli takes particular issue with the ALJ's characterization of his back impairment as "mild." Doc. #24-2 at 22-26. But the ALJ made clear that that he did not simply reject Dr. Orellana's report wholesale or without reason. Instead, the

ALJ adopted the report's conclusions as to the significant limitations on Montelli's functionality. *See* Doc. #12 at 30. The ALJ then explained why the opinions in Dr. Orellana's report conflicted with significant evidence in the record showing limits on Montelli's condition, as well as why they conflicted with the opinion of state agency consultants to which the ALJ afforded partial weight. *See id.* at 29-30. An "ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision," because particularly where faced with conflicting medical evidence, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also Veino*, 312 F.3d at 588 ("While the opinions of a treating physician deserve special respect, they need not be given controlling weight where they are contradicted by other substantial evidence in the record.") (citations omitted). Accordingly, it is clear that the ALJ considered the nature of Dr. Orellana's treatment of Montelli, the amount of medical evidence supporting Dr. Orellana's opinion, and the consistency of Dr. Orellana's opinion with the rest of the evidence in the medical record. And while the ALJ could have perhaps been clearer about his consideration of Dr. Orellana's qualifications in internal medicine, *see* Doc. #12 at 1061, the ALJ clearly accorded Dr. Orellana's opinion some weight as to Montelli's physical limitations consistent with that expertise. *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (no "slavish recitation of each and every factor" is required "where the ALJ's reasoning and adherence to the regulation are clear."); *Scott v. Berryhill*, 2018 WL 1608807, at *4–*5 (D. Conn. 2018). I therefore conclude that the ALJ did not err in assigning partial weight to Dr. Orellana's opinion.

As to Dr. Manohoran, I also conclude that the ALJ did not violate the treating physician rule. The ALJ carefully explained the reasons that he gave little weight to Dr. Manohoran's

opinion. He explained that Dr. Manohoran's opinion was internally inconsistent to the extent that the doctor suggested that Montelli could not work at all before suggesting that he could work up to 20 hours per week. Doc. #12 at 30. The ALJ also noted how Dr. Manohoran's opinion that Montelli could handle his own benefits and funds was inconsistent with Dr. Manohoran's overall opinion about Montelli's abilities to work. *Id.* at 30-31.

To the extent Montelli argues that the ALJ erred by failing to consider the opinions of Licensed Clinical Social Worker Doreen Buttner, Doc. #24-2 at 26, his argument is unpersuasive. Buttner co-signed several opinions with Dr. Manoharan, *see* Doc. #12 at 446, 521, 1058, and the ALJ made clear that he considered those opinions with Dr. Manoharan's opinions in assessing Montelli's RFC, *see id.* at 30.

## CONCLUSION

For the foregoing reasons, the Court DENIES Montelli's motion to reverse the decision of the Commissioner (Doc. #24) and GRANTS the Commissioner's motion to affirm (Doc. #27). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 16th day of December 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge